# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| DAVID L. DUCKWORTH, | ) | |
| | ) | |
| Debtor, | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| CHARLES E. COVEY, Chapter 7 Trustee | ) | |
| for David L. Duckworth, | ) | Case No. 13-cv-1258 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE BANK OF TOULON, | ) | |
| | ) | |
| Appellee. | ) | |

## O R D E R  &  O P I N I O N

This bankruptcy appeal is brought before the Court by Charles E. Covey, the Appellant, appealing the March 22, 2012 Opinion and February 21, 2013 Order of the United States Bankruptcy Court for the Central District of Illinois granting partial summary judgment for the Appellee on the issue of whether a security agreement entered into by the Appellee and the Debtor that referenced a misdated note, was sufficient to create an enforceable security interest in the collateral described in said agreement as against the bankruptcy Trustee. Both Appellant and Appellee have filed their briefs on appeal, and the matter is now ready for disposition. Although Appellant has requested oral argument, the Court has determined pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure

that the facts and legal arguments are adequately presented in the briefs and the record and the decisional process would not be significantly aided by oral argument. For the reasons stated below, the decision of the Bankruptcy Court is affirmed.

## LEGAL STANDARDS

This Court has jurisdiction to review the decision of the bankruptcy court pursuant to 28 U.S.C. § 158(a). On an appeal, a "district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. District courts are to apply a dual standard of review when considering a bankruptcy appeal: the bankruptcy court's findings of fact are reviewed for clear error, while the conclusions of law are reviewed de novo. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004). The Court reviews mixed questions of fact and law de novo. *Id*.

## BACKGROUND[1]

The Debtor, David L. Duckworth, and the Appellee, the State Bank of Toulon, entered into a security agreement called the Agricultural Security Agreement (the "ASA") on December 13, 2008 that purported to bestow upon the Appellee a security interest in certain collateral. (Doc. 1-1 at 44-49). The purpose of the security interest in the collateral was to secure a certain loan made by the Appellee to the Debtor. The ASA references a "Note" executed by the Debtor dated December 13,

---

[1] These facts are drawn from the parties' appellate briefs, the Bankruptcy Court's opinions and the Court's review of the record.

2008. (Doc. 1-1 at 49). The problem is there is no note dated December **13**, 2008.[2] There is, however, a properly executed note dated December **15**, 2008 evidencing the Debtor's promise to repay the Appellee $1,100,000. This December 15, 2008 note states it is secured by a security agreement dated December 13, 2008, as well as a mortgage. (Doc. 1-1 at 53). The Appellee did not include the loan principal amount, maturity or the loan number in the ASA. However, the ASA does bear the same account number as the December 15, 2008 note. In January 2010, Debtor borrowed more money from the Appellee and evidenced that loan with a note that also referenced the ASA. Sometime thereafter, the Debtor fell on hard times.

On November 23, 2010, the Debtor filed for Chapter 7 bankruptcy. The Appellant was duly appointed the Trustee of the Debtor's estate. On January 5, 2011, the Appellee brought an adversary proceeding against the Appellant,[3] the Debtor and others seeking to determine the validity, priority and extent of its secured interest in assets held in the Debtor's estate. The Appellee viewed some of those assets as collateral described in the ASA and listed on a properly filed UCC financing statement. (No. 11-ap-8002, Bankr. C.D. Ill. Doc. 1). On February 15, 2011, Appellant filed an answer and counter-claims, (No. 11-ap-8002, Bankr. C.D. Ill. Doc. 22), alleging that the ASA did not secure any indebtedness because the ASA referred to a non-existent December 13, 2008 note (Count 4); that any transfer of property between the Debtor and the Appellee pursuant to the ASA had to be

[2] The Court takes judicial notice of the fact that December 13, 2008 was a Saturday and December 15, 2008 was the following Monday.
[3] Incidentally, there appear to have been many adversary proceedings that grew out of this single bankruptcy case, No. 10-bk-83603. One of those adversary proceedings has culminated in an appeal before Judge Shadid, No. 13-cv-1087, where these same identical issues regarding the efficacy of the ASA are being litigated.

voided and any proceeds of the sale of any collateral described under the ASA returned to the Debtor's estate (Count 5) (*id.* at 8-9), and finally, a specific transfer of the Debtor's estate that the Appellee took as a setoff of $22,913.73 from one of Debtor's accounts had to be recovered under 11 U.S.C. §553(b) (Count 26) (No. 11-ap-8002, Bankr. C.D. Ill. Doc. 63).

On August 22, 2011, the Appellee filed a motion for partial summary judgment on the above referenced counts. (No. 11-ap-8002, Bankr. C.D. Ill. Doc. 121). On September 22, 2011, Appellant filed his response and cross-motion for partial summary judgment on the same issues. (No. 11-ap-8002, Bankr. C.D. Ill. Doc. 128).

The Bankruptcy Court issued an Opinion on the cross-motions for partial summary judgment on March 22, 2012. *In re Duckworth*, No. 11-ap-8002, 2012 WL 986766 (Bankr. C.D. Ill. 2012). That Court found that Illinois law applied to the issue of whether the ASA properly secured the $1,100,000 debt evidenced by the December 15, 2008 note. *Id.* at *3. The Court recognized that 810 ILCS 5/9-203(b) provides that for a security interest to be enforceable with respect to collateral against the debtor and third parties, there must be 1) value given by the secured party to the debtor, 2) the debtor must have rights in the collateral or the power to transfer rights in the collateral to a secured party, and 3) the debtor must have authenticated a security agreement that provides a description of the collateral.[4] *Id.* The Court found that all three requirements had been met for the ASA to be enforceable, the latter two requirements having been conceded by Appellant. *Id.* at

[4] 810 ILCS 5/9-203(b)(3) has three other subparagraphs that are not implicated by the facts of this case.

*3-5. The Court noted that under 810 ILCS 5/9-201(a), "a security agreement is effective according to its terms between the parties, against purchasers of collateral, and against creditors" except as otherwise provide under the Uniform Commercial Code, 2012 WL 986766 at *3, and that a security agreement need only create or provide for a security interest. *Id.* (citing 810 ILCS 5/9-102 (a) (74)). On February 21, 2013, the Bankruptcy Court entered an order amending its March 22, 2012 Opinion to include a finding for the Appellee on Count 26 regarding the setoff amount it took from the Debtor's account. (No. 11-ap-8002, Bankr. C.D. Ill. Doc. 240).

### DISCUSSION

Appellant lists the following six issues for this appeal: 1) Whether the terms of the ASA dated December 13, 2008 are effective to secure the promissory note dated December 15, 2008 executed by the Debtor in favor of the Appellee; 2) whether Section 5/9-203(b) of the Illinois Uniform Commercial Code is applicable to this case; 3) whether it is necessary for the Appellee to, if possible, reform the ASA in order for its terms to be effective to secure the December 15, 2008 note; 4) whether the ASA is capable of reformation with parol evidence against the Trustee; 5) whether clear and convincing evidence exists that the ASA contains a mutual clerical error in the description of the secured debt; and finally, 6) whether the Bank must bear the consequences of its own negligence? The Court finds that 1) the ASA effectively secured through its own language the promissory note dated December 15, 2008 executed by the Debtor in favor of the Appellee; 2) Section 9-203(b) of the Illinois Uniform Commercial Code is applicable to this case; 3) the Appellee cured

5

any negligence in referring to a December 13, 2008 note as the "Note" through the use of an expansive definition that encompassed the December 15, 2008 note within the ASA's term "Indebtedness"; 4) the ASA is effective against the Trustee; and 5) reformation is not an issue in this appeal and therefore, it is unnecessary to consider it to decide this case.

## I.     Did The ASA Create A Security Interest?

Appellant's central issue on appeal is whether the ASA effectively secured the promissory note dated December 15, 2008 executed by the Debtor in favor of the Appellee. Appellant contends that 810 ILCS 5/9-203, entitled "Attachment and enforceability of security interest; proceeds; supporting obligations; formal requisites", is unhelpful to the analysis. The Court does not agree with the Appellant that 810 ILCS 5/9-203(b) does not factor into the analysis of whether an enforceable security interest was created by an agreement. However, *assuming arguendo* that the Appellee is correct that 810 ILCS 5/9-203(b) only provides for the enforceability of a valid security interest, not its creation, the Bankruptcy Court's finding that the ASA is effective to secure the December 15, 2008 loan is still correct.

### A.     The ASA Provides For A Security Interest In The Collateral Described Therein Regardless Of Its Reference to a December 13, 2008 Promissory Note.

The Seventh Circuit explained in *In re Martin Grinding & Mach. Works, Inc.*, 793 F.2d 592 (1986), that in seeking to answer the question of whether an agreement has created a lien, one must look to state law. *See id.* at 594 (citing *Butner v. United States*, 440 U.S. 48 (1979)); *see also Peterson v. McGladrey &*

*Pullen, LLP*, 676 F.3d 594, 598 (7th Cir. 2012). The ASA provides that Illinois law governs to the extent it is not preempted by federal law. (Doc. 1-1 at 48).

Under Illinois law, a security agreement "means an agreement that creates or provides for a security interest." 810 ILCS 5/9-102 (a)(74). A security interest, in turn, is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." 810 ILCS 5/1-201(b)(35). An agreement is "the bargain of the parties in fact, as found in their language or inferred from other circumstances, including course of performance, course of dealing, or usage of trade." 810 ILCS 5/1-201(b)(3). Thus, to determine whether a security agreement provides for a security interest, one should first look to the language of the specific written agreement itself, if there is one.[5]

For purposes of this appeal, Appellant only challenges the ASA's efficacy because it references a non-existent promissory note dated December 13, 2008 and does not contain other information, such as a loan number or a principal amount, that can be used to link the ASA to the December 15, 2008 note. There is no dispute that there never was a note dated December **13**, 2008, only one dated December **15**, 2008. Appellant does not challenge any other facet of the ASA, such as its description of the collateral. Therefore, the Court agrees with the Bankruptcy Court that the ASA sets out an otherwise valid security agreement between the Debtor and the Appellee as to all other facets of the loan transaction. *See In re Duckworth*,

---

[5] Courts have found valid security interests in the absence of specifically designated written security agreements by looking at separate documents associated with the secured transaction. *E.g.*, *In re Wambach*, 484 F.2d 572, 575-76 (7th Cir. 1973); *see also Turk v. Wright & Babcock, Ltd.*, 528 N.E.2d 993, 994 (Ill. App. Ct. 1988) ("Substance rules over form and courts will look through a transfer absolute in form to find a secured transaction if that was the real intent of the parties.")

No. 11-ap-8002, 2012 WL 986766, at *5 ("Despite the mistake as to the date of the Note, the ASA was valid and enforceable by SBT against the DEBTOR."). The only point of contention for this case is whether the ASA's description of the indebtedness it purportedly secured was sufficient. Yet the Appellant has not provided any support from the Illinois Uniform Commercial Code or Illinois case law for the proposition that a security agreement even need contain a description of the indebtedness.

Appellant's contention that 810 ILCS 5/1-201 (35) and 9-201 (a) require identification of the secured debt is incorrect and ignores the actual text of the statutes. (Doc. 2 at 25). 810 ILCS 5/1-201 (35) states:

> "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. "Security interest" includes any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Article 9. "Security interest" does not include the special property interest of a buyer of goods on identification of those goods to a contract for sale under Section 2-401, but a buyer may also acquire a "security interest" by complying with Article 9. Except as otherwise provided in Section 2-505, the right of a seller or lessor of goods under Article 2 or 2A to retain or acquire possession of the goods is not a "security interest", but a seller or lessor may also acquire a "security interest" by complying with Article 9. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer under Section 2-401 is limited in effect to a reservation of a "security interest." Whether a transaction in the form of a lease creates a "security interest" is determined pursuant to Section 1-203.

Similarly, 810 ILCS 5/9-201 (a) provides: "General effectiveness. Except as otherwise provided in the Uniform Commercial Code, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." The Court does not read either of those two

provisions as requiring a security agreement to identify the underlying debt. Moreover, Appellant has not produced a single Illinois case reading such a requirement into either of those two provisions.

Instead, Appellant cites several cases from non-Illinois jurisdictions in support of his argument that a security agreement must describe the secured debt obligation in order to be valid. *In re Donckers*, 360 B.R. 905 (Bankr. W.D. Ark. 2007) (case dealing with mortgages not Article 9 secured transactions); *In re Immerfall*, 216 B.R. 269, 274 (Bankr. D. Minn. 1998) (explaining that the "Minnesota Court of Appeals has made it clear that a security agreement should specifically identify the debt for which it creates a lien; at the very least, a joint reading of the security agreement and the underlying debt instruments should enable one to determine just when a debtor can demand release of a security interest."); *In re Paul Pack Steel Erection, Co., Inc.*, 126 B.R. 310, 311 (Bankr. E.D. Tenn. 1991) (case holding Article 9 did not even apply to the agreement *sub judice*); *In re Belize Airways Ltd.*, 7 B.R. 604 (Bankr. S.D. Fla. 1980). However, none of those cases explains either where in the Uniform Commercial Code such a requirement is found or the rationale for adopting this purported rule. This Court also found cases applying non-Illinois law that held a security agreement must identify the underlying debt to be valid, but they were similarly quiet as to where in the Uniform Commercial Code such a requirement is found or what justified such a conclusion of law. *E.g.*, *Gateway Hotel Partners, LLC v. C.I.R.*, No. 19182-07, 2014 WL 92027, at *14 (T.C. Jan. 9, 2014) (applying Missouri law); *In re Hoyt's, Inc.*, 117 B.R. 226, 230 (Bankr.

N.D. W. Va. 1990); *Trust Co. of Columbus v. Associated Grocers Co-op., Inc.*, 263 S.E.2d 676, 678 (Ga. Ct. App. 1979).

Other cases from different non-Illinois jurisdictions hold that a security agreement need not describe the underlying debt obligation in order to create a valid security interest. *E.g.*, *Roan v. Murray*, 556 N.W.2d 893, 896 (Mich. Ct. App. 1996); *Baldwin v. Hays Asphalt Const., Inc.*, 893 P.2d 275, 278 (Kan. Ct. App. 1995); *New W. Fruit Corp. v. Coastal Berry Corp.*, 1 Cal. Rptr. 2d 664, 668 (1991); *First Nat. Bank, Cortez, Colo. v. First Interstate Bank, Riverton, Wyo.*, 774 P.2d 645, 650 (Wyo. 1989); *In re Cooley*, 624 F.2d 55, 57 (6th Cir. 1980) (applying Kentucky law).

In one of those cases, *New W. Fruit Corp. v. Coastal Berry Corp.*, a California appellate court actually rejected the same argument brought by the Appellant here that a security agreement itself must describe the secured debt obligation in order to create a valid security interest. 1 Cal. Rptr. 2d 664. In that case, the court recognized that an earlier California appellate court had stated in dicta that "[a]t a minimum the 'terms' [of a security agreement] must recite the obligation secured." 1 Cal. Rptr. 2d at 668 (citing *Needle v. Lasco Indus., Inc.*, 89 Cal. Rptr. 593 (Ct. App. 1970)). The *New W. Fruit Corp.* court questioned the validity of the *Needle* court's statement and cautioned against its application to the case before it because it was an "overly restrictive interpretation" *Id*. The Court then squarely held that "the critical factor in defining the parameters of a security agreement is the intent of the parties. Thus, although we agree that the [security agreement] lacked precision in identifying the obligations secured, this deficiency was not fatal if the loans at issue here were within the intended scope of the ongoing business relationship between

[the transacting parties]." 1 Cal. Rptr. 2d at 668.[6] The Court went on to discern the intent of the parties as to what obligations were contemplated under the security agreement by examining the course of dealing, usage of trade, and course of performance, *id.*; all of which were extrinsic to the security agreement.

Similarly, in *Roan v. Murray*, the court went so far as to state that under Michigan's version of section 9-203, which does not differ from Illinois' version, "it is highly questionable whether a written security agreement needs to state *any terms* of the security agreement other than to sufficiently describe the collateral." 556 N.W.2d at 896 (emphasis added). The rationale behind the *Roan* court's pronouncement is that section 203(b)(3)(A) of Article 9 of the U.C.C. requires an enforceable security agreement to only provide a description of the collateral; it does not by its terms require a description of the indebtedness, or anything else for that matter. The Bankruptcy Court recognized this as well. *In re Duckworth*, No. 11-ap-8037, 2013 WL 21123, at *6 (Bankr. C.D. Ill. Jan. 18, 2013) (rejecting Appellee's request to reconsider the March 22, 2012 Opinion).

The Appellant has not cited any case applying Illinois law that directly addresses the question of whether a security agreement must describe the secured debt in order to create a valid security interest. Instead, the Appellant cites cases that deal with the issue of whether collateral descriptions expressing otherwise valid security interests can encompass property acquired after the effective dates of

---

[6] The *New W. Fruit Corp.* holding is in complete harmony with *Turk v. Wright & Babcock, Ltd.*, an Illinois case where the court held "under the law the question of whether a security agreement exists is one of intent and the absence of a separate and written agreement is not controlling." 528 N.E.2d 993, 995 (Ill. App. Ct. 1988) (finding a valid security interest in the absence of a security agreement).

the security agreements. *E.g.*, *In re Martin Grinding & Mach. Works, Inc.*, 793 F.2d 592. In such cases, courts again look to the intent of the parties as manifested in the terms of the security agreement, *id.* at 596, which is what 810 ILCS 5/1-201(b)(3) itself implies: an agreement is "the bargain of the parties in fact, as found in their language."

When one turns to the language of the ASA, one will find that it provides that the Debtor gave the Appellee a security interest in the collateral described within it "to secure the Indebtedness". (Doc. 1-1 at 44). The ASA defines "Indebtedness" as "the indebtedness described by the Note <u>or Related Documents</u>, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement <u>or under any of the Related Documents</u>." (*Id.* at 49 (emphasis added)). "Note" is defined as "the Note executed by [the Debtor] in the principal amount of $_____ dated December 13, 2008 together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement." *(Id.*). The term "Related Documents" is defined as "<u>all promissory notes</u>, . . . and all other instruments, agreements and documents, whether now or hereafter existing, <u>executed in connection with the Indebtedness</u>." (*Id.* (emphasis added)). The ASA contains an integration clause that states in relevant part: "This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement." Clearly then, the ASA informs one to look not only to the Note, but also to the Related Documents, to find what indebtedness is covered by the ASA.

The Bankruptcy Court found these definitions did not support the Appellee's argument that the ASA effectively secured a separate subsequent loan made to the Debtor pursuant to a January 29, 2010 promissory note. *In re Duckworth*, No. 11-ap-8002, 2012 WL 986766 at *6.[7] However, it does not appear that the Bankruptcy Court analyzed whether the definitions supported a straightforward reading of the ASA that the December 15, 2008 note itself was a "Related Document" that described the "Indebtedness".[8]

The ASA purports to secure the Indebtedness as it is described by the Note <u>or</u> the Related Documents. "Related Documents" means all promissory <u>notes</u> and all other documents <u>executed in connection with</u> the Indebtedness. Appellant concedes that "the [Appellee] gave value in return for the [December 15, 2008 note]." (Doc. 2

---

[7] Appellant makes much of the Bankruptcy Court's finding that the ASA's definitions did not support the Appellee's argument that the ASA effectively secured a separate subsequent loan made to the Debtor pursuant to a January 29, 2010 promissory note. In his view, that the language of the ASA did not include a dragnet clause means there could be no debt other than one evidenced by a December 13, 2008 note that could be secured by the ASA. Appellant is wrong. He is incorrectly conflating the fact that the ASA does not contain a future-advances clause to *extend* the scope of the security interest to *future* debts with the wholly separate issue of whether the language in the ASA sufficiently *created* a security interest for the *present* debt, which is the value that was given as part of the same and sole transaction. Dragnet clauses and future-advances clauses are explicit provisions frequently found in security agreements that "enlarge[] the size of the creditor's lien by any credit advanced by him to the debtor after the original loan was made." *In re Kazmierczak*, 24 F.3d 1020, 1021 (7th Cir. 1994). The Bankruptcy Court found that the Appellee never contended the ASA identified the January 29, 2010 loan, which is obviously not the case for the December 15, 2008 loan. This is why the Appellant's contention—that the absence of a dragnet clause in the ASA disallows a finding that the December 15, 2008 note and loan were contemplated by the ASA—is misplaced and without merit.

[8] Appellant argues that there is no evidence that the references in the ASA to the December 13, 2008 and the blank loan amount are mistakes. If that is correct, then the conclusion that one is to consult Related Documents to gain the complete understanding of the Indebtedness contemplated by the ASA is all the more reasonable.

at 17.) The December 15, 2008 note clearly bears the signature of the Debtor. It seems clear then that the December 15, 2008 note was *executed in connection with* the Indebtedness, as those italicized words are taken to mean in plain English, and therefore must be considered a Related Document under the ASA. *See Emerg. Med. Care, Inc. v. Marion Meml. Hosp.*, 94 F.3d 1059, 1061 (7th Cir. 1996) ("In interpreting a contract, Illinois law requires that clear and unambiguous terms in the contract must be given their ordinary and natural meaning. Illinois courts also apply the principle of construction that a contract must be interpreted as a whole, giving meaning and effect to each provision." (internal citations and quotation marks omitted)).

Looked at another way, the ASA by its own terms incorporates the so-called "composite document rule" and expressly allows "Related Documents" to be considered definitional sources for indebtedness under the ASA. The composite document rule states that "in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract." *Tepfer v. Deerfield Sav. and Loan Ass'n*, 454 N.E.2d 676, 679 (Ill. App. Ct. 1983). Given the explicit instruction in 810 ILCS 5/9-201 that "a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors," the Court sees no reason to read the ASA in a manner that does not comport with its own explicit terms.

Thus, the Appellant's premise that the ASA does not sufficiently describe the debt it purports to secure, is incorrect. The Court finds the December 15, 2008 note is a "Related Document" and necessarily part of the "Indebtedness" under the ASA's own labyrinthine definitions. The ASA did identify the debt it secured because it incorporated the December 15, 2008 note into its definition of Indebtedness. Therefore, in this Court's view, the terms of the ASA dated December 13, 2008 are effective to secure the promissory note dated December 15, 2008 executed by the Debtor in favor of the Appellee. A district court may affirm the bankruptcy court upon any grounds supported by the record. *In re Nat'l Indus. Chem. Co.*, No.98-cv-4081, 1998 WL 887065 (N.D. Ill. Dec. 11, 1998) (citing *McCarthy v. Kemper Life Ins. Companies*, 924 F.2d 683, 686 n. 1 (7th Cir. 1991)).

### B.     810 ILCS 5/9-203 Is Relevant In Determining Whether A Security Interest Exists.

In *In re Martin*, a case upon which Appellant heavily depends throughout his brief, the court identified the issue before it as "whether the Bank holds a security interest in the debtor's inventory and accounts receivable." 793 F.2d at 594. The Court proceeded to first look to see whether the requirements of 810 ILCS 5/9-203(b) (as it was then codified) were met. *Id.* In so doing, the Court found that "the debtor ha[d] signed a security agreement, that value ha[d] been given, and that the debtor ha[d] rights in its inventory and accounts receivable." *Id.* The Court then went on to determine the scope of the security interest. *Id.* This demonstrates that Appellant's contention that Section 5/9-203(b) is irrelevant to the issue of whether a security interest exists is incorrect.

This Court has found Illinois courts consistently look to whether the transacting parties satisfied Section 5/9-203(b) in deciding whether a security interest has been created. *E.g.*, *Metro. Life Ins. Co. v. Am. Nat. Bank & Trust Co.*, 682 N.E.2d 72, 76 (Ill. App. Ct. 1997) ("The requirements for the creation of a security interest by a debtor in favor of his creditor are that: (1) the debtor must have or acquire rights in the collateral; (2) the creditor must give value to the debtor; (3) the creditor and the debtor must agree that a security interest shall attach to the collateral; and (4) . . . there must be a written security agreement signed by the debtor that contains a description of the collateral."); *Midwest Decks, Inc. v. Butler & Baretz Acquisitions, Inc.*, 649 N.E.2d 511, 515-16 (Ill. App. Ct. 1995) ("Three prerequisites must be met in order to create a security interest which 'attaches' and is enforceable against the debtor or a third party: (1) the collateral must be in the possession of the secured party or the debtor must sign a security agreement which describes the collateral; (2) value must be given; and (3) the debtor must have rights in the collateral."); *Andrews v. Mid-Am. Bank & Trust Co. of Fairview Heights*, 503 N.E.2d 1120, 1123 (Ill. App. Ct. 1987); *Peterson v. Ziegler*, 350 N.E.2d 356, 360 (Ill. App. Ct. 1976). This was the same course followed by the Seventh Circuit in *In re Martin*, 793 F.2d at 594, and by the Bankruptcy Court in this case, *In re Duckworth*, 2012 WL 986766, at *4-5.

Here, all applicable requirements under Section 5/9-203(b) have been met. First, the Bankruptcy Court correctly found that value was given as part of the transaction when the Appellee disbursed $1,099,553.50 to the Debtor on December 15, 2008. 2012 WL 986766, at *4-5. Second, the Court also correctly found that the

Appellant did not challenge that the Debtor had rights in the collateral listed in the ASA, that the ASA's description of the collateral was somehow deficient, or that the Debtor had executed the ASA. *Id.* at *4. Therefore, the Bankruptcy Court's Section 5/9-203(b) analysis was appropriate and correct.

## II. Was Parol Evidence Admissible To Discern The Intent Of The Parties?

Even if the Court found that the ASA did not reference the December 15, 2008 note as part of the indebtedness, it would still find the ASA secured the debt evidenced by the December 15, 2008 note because, quite simply, it was the intent of the parties to do so. The Court knows as much not only from the definition of "Related Documents", but also from the deposition testimony of the Debtor (Doc. 1-4 at 473) and the declaration of the Appellee's Vice-President and Agricultural Loan Officer, Douglas Blunier (No. 11-ap-8002, Bankr. C.D. Ill. Doc. 123), the two people who participated in the actual structuring of the loan transaction.

The Bankruptcy Court thoroughly explained why parol evidence of the parties' intent was available for the Court's consideration. That Court wrote:

> The parties devote a substantial portion of their briefs to arguments about whether the ASA is ambiguous and whether parol evidence is admissible to prove the true intent of the DEBTOR and SBT.[6] Extrinsic proof of the secured debt is admissible whether or not the ASA is determined to be ambiguous. Illinois law is clear that the parol evidence rule applies only when the parties to a contract are litigating its meaning. When litigation involves a dispute over the meaning of a contract that is raised by a third party, parol evidence is admissible. Northern Assur. Co. v. Chicago Mut. Bldg. Ass'n, 198 Ill. 474, 64 N.E. 979 (1902); Quality Lighting, Inc. v. Benjamin, 227 Ill.App.3d 880, 887, 169 Ill.Dec. 890, 592 N.E.2d 377 (Ill.App. 1 Dist.1992); Rittenhouse v. Tabor Grain Co., 203 Ill.App.3d 639, 148 Ill.Dec. 958, 561 N.E.2d 264, 271 (Ill.App. 4 Dist.1990); General Cas. Co. of Wisconsin v. Elam, 8 Ill.App.3d 215, 225, 289 N.E.2d 699 (Ill.App. 5 Dist.1972). See, also, Kaplan v. Shure Bros., Inc., 266 F.3d 598, 606 (7th Cir.2001); In re

S.M. Acquisition Co., 296 B.R. 452, 466 (Bankr.N.D.Ill.2003), aff'd 2005 WL 6292653 (N.D.Ill.2005). So under Illinois law, in this dispute between SBT, a party to the ASA, and two nonparties, the TRUSTEE and MICHLIG, the parol evidence rule does not exclude extrinsic evidence of the actual debt that the DEBTOR and SBT intended to be secured.

*In re Duckworth*, No. 11-ap-8002, 2012 WL 986766 (Bankr. C.D. Ill. Mar. 22, 2012).

The Appellant's response is not that the Bankruptcy Court was incorrect but that "none of these cases involved an attempt by a party to an unambiguous security agreement to use parol evidence to <u>alter its express terms</u> as against a subsequent creditor who relied thereon." (Doc. 2 at 35 (emphasis added)). Appellant relies primarily on *In re Martin*, 793 F.2d 592, in arguing that this Court may not resort to parol evidence to determine what the intent of the parties was in creating a security interest, but the Appellant's reliance on that case is misplaced. It is true that the *Martin* court held that where a security agreement is unambiguous, parol evidence may not be used to <u>expand</u> a security interest to reach <u>collateral</u> beyond what was described in the security agreement. 793 F.2d at 594 (emphasis added). But this is not a situation where the secured party is attempting to enlarge the scope of a security interest in collateral described within the security agreement.

First, the Bankruptcy Court utilized parol evidence to determine whether value had been given in exchange for the December 15, 2008 note as required by 810 ILCS 5/9-203(b), which the Court has already explained was appropriate in section I.B. *supra*. As the Bankruptcy Court correctly noted, "proof that value has been given is made by proving that loan proceeds have been delivered to the borrower, an event that is not established by the mere execution of loan documents." *In re Duckworth*, No. 10-83603, 2013 WL 211231, at *5 n.5.

Second, the Appellee is not attempting to alter or broaden the collateral description in the ASA; rather it is merely attempting to illuminate the meaning of the term "Indebtedness" as it was understood by the parties at the time the agreement was executed. As the Bankruptcy Court properly noted, "[t]he parol evidence rule excludes extrinsic evidence offered to 'alter, vary or contradict' the written agreement," 2013 WL 211231, at *5 n.5 (citing *Asset Recovery Contracting, LLC v. Walsh Const. Co. of Illinois*, 980 N.E.2d 708, 725 (Ill. App. Ct. 1 2012)), not to bar evidence of satisfaction of 810 ILCS 5/9-203(b) such as evidence of what value was actually given to be secured by the agreement.

Furthermore, *In re Martin* is inapposite to this case because it dealt with collateral whereas this case deals with indebtedness. 793 F.2d 592. In that case, a secured creditor tried to assert an interest in particular categories of collateral that were not mentioned in the security agreement—inventory and accounts receivable, while several other categories of collateral—all machinery, furniture, fixtures and equipment, were referenced in the security agreement. *Id.* at 595. The Appellant argues that there is no reason to limit the holding of *In re Martin* to collateral but there is a reason. The reason is that the Uniform Commercial Code does not require the inclusion of the debt in the security agreement whereas it explicitly requires the description of the collateral. 810 ILCS 5/9-203(b). Moreover, financing statements, which must be filed with the Secretary of State to be perfected, require descriptions of the collateral as well. *See Helms v. Certified Packaging Corp.*, 551 F.3d 675, 679 (7th Cir. 2008) (quoting 1 Eldon H. Reiley, SECURITY INTERESTS IN PERSONAL PROPERTY § 7:3, pp. 7-3 to 7-4 (3d ed. 1999) ("The financing statement is an

abbreviation of the security agreement. It is a streamlined paper to be filed for the purpose of giving notice to third parties of the essential contents of the security agreement.")). Thus, given the importance the Uniform Commercial Code assigns to providing subsequent creditors with accurate descriptions of collateral, and the comparable immateriality the Code gives to descriptions of indebtedness, there is no reason to expand the holding of *In re Martin* to the facts of this case.

For the reasons stated above, this Court finds that the Bankruptcy Court did not err in considering the testimony of the Debtor or Mr. Blunier regarding their intent to secure the December 2008 loan through the execution of the ASA.

## III.   Must The ASA Be Reformed?

The Court has concluded that the definitions of the ASA were sufficient to show that the indebtedness covered by the ASA included the December 15, 2008 note amount. Consequently, there is no reason to consider the issue of reformation of the ASA. In any event, reformation does not seem to be a proper issue on appeal since the Bankruptcy Court did not mention reformation in its March 22, 2012 Opinion and later completely disclaimed having considered it at all. *See In re Duckworth*, 11-ap-8037, 2013 WL 211231, at *7, n. 9 ("The TRUSTEE mischaracterizes the Court's prior ruling as having "reformed" the ASA. . . . The issue here is whether the ASA was effective to secure the $1.1M Note as of the bankruptcy filing date. . . . The common law cause of action for reformation had nothing to do with that determination.").

## IV.  Is The Security Interest Enforceable Against The Trustee?

Illinois law provides that "a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." 801 ILCS 5/9-203(a). As discussed earlier, the ASA is effective and sufficiently secures the collateral listed within it. Section 544(a)(1) of Title 11 of the United States Code gives the trustee the status of a hypothetical judicial lien creditor from the date of the filing of the bankruptcy petition. Therefore, the Bankruptcy Court did not err when it concluded: "According to the plain terms of sections 9–201 and 9–203, a security agreement that is effective and enforceable against the debtor, is likewise effective and enforceable against third parties as well." *In re Duckworth*, 2012 WL 986766, at *5. Since the Trustee stands in the shoes of a hypothetical judicial lien creditor, the ASA and the security interest it created, is as effective against him as it would be any other third-party creditor.

## CONCLUSION

This Court agrees with the Bankruptcy Court that the Agricultural Security Agreement created a valid and enforceable security interest in the collateral listed in that document. Therefore, the Court AFFIRMS the Bankruptcy Court's grant of summary judgment in Appellee's favor. IT IS SO ORDERED.

CASE TERMINATED.

Entered this 28th day of February, 2014.

s/ Joe B. McDade
JOE BILLY McDADE

United States Senior District Judge
